The CITY OF HAMMOND, a Municipal Corporation, and George Carlson, John Skurka, Ken Spurlock, Gerald Bobos, Edward Bragiel, John Parrish, Louis Karubas, Anthony Colantonio, Frank Mrvan, all as members of The Common Council of the City of Hammond, and George Sudicky, Thomas C. Conley, John R. Stanish, all as members of the Board of Public Works and Safety of the City of Hammond and Theodore L. Sendak, Attorney General of the State of Indiana, Appellants (Defendants),

v.

RED TOP TRUCKING COMPANY, INC., an Indiana Corporation, Appellee (Plaintiff).

No. 3–578A101.

Court of Appeals of Indiana, Fourth District.

Aug. 26, 1980.

Rehearing Denied Oct. 17, 1980.

C. Jerome Smith, Smith & Funk, Hammond, for appellants.

William J. O'Connor and David W. Weigle, O'Connor & Weigle, Hammond, for appellee.

YOUNG, Presiding Judge.

Appellee Red Top Trucking Co. challenged the validity of Hammond ordinances no. 3089 and no. 4137. The trial court held, *inter alia*, that all of the first ordinance and a portion of the second were unconstitutional. We affirm.

On July 1, 1975, Red Top applied to the City of Hammond for a permit to excavate sand. Shell Oil Co. owned the land in question. At the time material to this lawsuit Red Top was negotiating to buy the land. Red Top did not want to complete the purchase without having secured the desired permit. Excavation was an appropriate use

of this land under the city's zoning ordinances.

The Hammond Municipal Code required the Board of Public Works and Safety to pass upon Red Top's application. The board approved the application July 15, 1975, and issued the permit on August 4.

Ordinance no. 3089 of the Hammond Municipal Code required the ratification of the Hammond Common Council in order for the permit to be effective. The council considered the application on August 11 and 25. The council refused to ratify the permit at the latter meeting. The minutes of these meetings disclose that this decision resulted from the protests of certain local political candidates and other citizens opposed to Red Top's application.

On October 14, 1975, the city council passed ordinance no. 4137. This action tightened the requirements for an excavation permit. Section 2(B) of the new ordinance required the proposed excavation to be three miles distant "from the nearest residential district so as not to be unduly detrimental to the safety, health or general welfare of the public." Section 3 provided that a permit would require ratification by the council. (The trial court ultimately found these two sections unconstitutional.)

Red Top filed this action December 5, 1975. Its complaint, as subsequently amended, prayed that the court declare ordinance no. 3089 and sections 2(B) and 3 of no. 4137 unconstitutional, that the court mandate the council to grant the permit, and that the court grant all other appropriate relief.

Completing the cycle of events, the Board of Public Works and Safety revoked Red Top's permit, which had never been approved by the city council, on March 18, 1976. The board's minutes disclose that this was based on (1) Red Top's lack of interest in the realty, (2) the three-mile requirement of ordinance no. 4137, and (3) that the original permit had otherwise been illegally issued, etc.

The first issue is one of standing. The city challenges the trial court's conclusion that Red Top had standing to apply for the permit. The city claims there was no standing because Red Top had no interest in the realty. The parties stipulated that in fact Red Top had no interest. Red Top's only connection with the realty was that it was negotiating to buy the land.

We resolve this question against the city for several reasons. In the first place the record justifies a conclusion that the city never had as a requirement for a permit that an applicant have an interest in the realty. The relevant ordinance was completely silent as to interest in the realty. Indeed the ordinance was reasonably subject to a contrary reading, namely, that an interest in the realty was not a prerequisite for securing a permit. This is because the ordinance utilized the unrestricted word "person" to designate those individuals who could seek a permit: "No person shall excavate sand, fill, gravel or other earth substance for commercial purposes from any property within the city, unless such person shall have secured a permit from the board of public works and safety . . . ."

Second, if interest in the realty is, as the city now claims, a criterion of great importance, why did not the city find out that information before the board granted the permit? That the city now attaches so great importance to an interest in the realty, when the city ignored the matter initially, justifies a conclusion that the city's standing requirement was non–existent and was conceived belatedly.

Third, the city cites no case law which requires an interest in the realty in order to receive an excavation permit. The case law it relies upon does not concern excavation permits.

Finally, the Supreme Court in *Insurance Comm'rs v. Mutual Medical Ins., Inc.*, (1968) 251 Ind. 296, 241 N.E.2d 56, 59–60, held that the rules of standing then found in § 2–201 et seq. of Burns Ind.Stat.Ann. (1967 Repl.) applied to administrative agencies. This requirement of standing is now found in Trial Rule 17 of the Ind.Rules of Procedure. Under these rules of standing the case law has held that standing reposes upon the person

entitled to the fruits of the action. *John A. Boyd Motor Co. v. Claffey*, (1929) 94 Ind. App. 492, 165 N.E. 255, 256; 2 W. Harvey, Indiana Practice 212 (1970). Red Top falls within this definition because it alone desired to carry out the excavation. Consequently Red Top had standing to apply for the permit.

■ The second issue also is one of standing. The city contends that Red Top did not have standing to bring this action for declaratory relief. We disagree.

■ In this action Red Top challenges, *inter alia*, the refusal of the common council to ratify its permit. It also challenges the board's subsequent revocation of its permit. Neither side to this appeal has pointed to any statutory means by which Red Top could gain access to the courts to seek judicial review of these matters. Nonetheless the Supreme Court has held that judicial review must be made available in circumstances such as these. *Murphy v. Indiana Parole Bd.*, (1979) Ind., 397 N.E.2d 259, 261; *State ex rel. State Bd. of Tax Comm'rs v. Marion Sup. Court*, (1979) Ind., 392 N.E.2d 1161, 1165; *City of Mishawaka v. Stewart*, (1974) 261 Ind. 670, 310 N.E.2d 65, 67; *State ex rel. Russel v. Michaw*, (1971) 256 Ind. 459, 269 N.E.2d 533, 534; *Prunk v. Indianapolis Redevelopment Comm'n*, (1950) 228 Ind. 579, 93 N.E.2d 171, 173. "[A] litigant is entitled to judicial review of administrative action taken by a board, commission or governmental corporation, notwithstanding the failure of the Legislature to provide for a statutory remedy." *Dortch v. Lugar*, (1971) 255 Ind. 545, 266 N.E.2d 25, 47. The particular form of action utilized to obtain this judicial review may be a declaratory judgment. *Mathis v. Cooperative Vendors, Inc.*, (1976) Ind.App., 354 N.E.2d 269, 274 (held, declaratory action is appropriate where no statutory provision for appeal exists). In light of this authority we hold that Red Top had standing to bring this action for declaratory relief.

For its third issue the city challenges the trial court's conclusion that section 2(B) of ordinance no. 4137 was unconstitutional. This provision banned excavation within three miles of a residential district. The trial court's ruling on this issue is as follows:

5. Section 2(B) of Ordinance Number 4137 enacted by the Common Council of the city of Hammond on October 14, 1975, and which became effective October 21, 1975, is unconstitutional and void on its face since said provision is an arbitrary and capricious standard having no reasonable relationship to the protection of the safety, health and general welfare of the community, has the practical effect of prohibiting the business of excavating within the City of Hammond, and deprives plaintiff of its right to engage in the business of excavating sand and other earth materials in the City of Hammond in violation of Article I, Sections 12 and 21, of the Indiana Constitution and the 5th and 14th Amendments to the United States Constitution.

■■ Without doubt the city of Hammond may regulate excavations. This regulation is justified by the city's obligation to protect the public welfare. However regulation which is too harsh or which lacks justification may be struck down. "A legislative body cannot arbitrarily interfere with private business or impose unnecessary restrictions on lawful occupations under the guise of protecting public interests." *Board of Zoning Appeals v. Koehler*, (1963) 244 Ind. 504, 194 N.E.2d 49, 54–55. "The right of every individual under the Indiana Constitution to engage in any lawful business cannot be prohibited unless such prohibition is grounded upon some condition existing in the business which adversely affects the public health, morals, safety or welfare." *Department of Ins. v. Motors Ins. Corp.*, (1956) 236 Ind. 1, 138 N.E.2d 157, 164. Whether this ordinance meets these criteria depends upon its reasonableness. *Goldblatt v. Town of Hempstead, N. Y.*, (1962) 369 U.S. 590, 82 S.Ct. 987, 990, 8 L.Ed.2d 130; *Stuck v. Town of Beech Grove*, (1928) 201 Ind. 66, 163 N.E. 483, 487. In *Goldblatt v. Town of Hempstead, N.Y.* the Court said that the reasonableness of the particular ordinance there under consideration de-

pended upon the nature of the menace the ordinance is designed to protect, the availability and effectiveness of less drastic steps, and the loss suffered by imposition of the ordinance. 82 S.Ct. 990. Similar criteria are appropriate in this case. Reasonableness is a question of evidence. See, *e. g., Stuck v. Town of Beech Grove, supra,* where the Supreme Court reversed for failure of the trial court to admit evidence on the unreasonableness of an ordinance.

■ In the case at hand there was ample evidence from which the court could find the ordinance unreasonable. Red Top supplied the only evidence on this issue. Its witness was Mr. Robert Kincaid, a civil engineer employed by Red Top's parent company. He testified that the side effects of sand excavation include cave–ins, blowing of sand, drainage problems and erosion. He listed the steps which could be employed to curtail or control these side effects. In conclusion he testified that it was not necessary to impose a three-mile restriction in order to control the side effects of excavation.

■ As we noted the city did not introduce any counter-evidence. The city argues on appeal, therefore, simply that Red Top's evidence was insufficient to overcome the presumption that the ordinance was valid. In support of this argument the city offers nothing more than its conclusory statement. The city does not disclose its reasoning nor point out in what manner the evidence is lacking. By failing to specify wherein the evidence is insufficient, the city has waived this issue. *May v. State,* (1976) 265 Ind. 25, 349 N.E.2d 171, 172. Moreover, the city had pegged its argument solely to the presumption of validity. The city ran the risk that, as happened in this case, the trial judge would conclude that Red Top's evidence overcame this presumption. This of course was that court's prerogative because a presumption is true only until proven other-

wise. *Jacks v. State,* (1979) Ind., 394 N.E.2d 166, 175; *cf.* Ind.Rules of Procedure, Trial Rule 9.2(D) (" 'Presumed' means that the trier of fact must find the existence of the fact presumed unless and until evidence is introduced which would support a finding of its non–existence.").

■ The city makes a second argument in defense of section 2(B). It contends there was no evidence that Red Top would undertake preventive measures to control the side effects of excavation. It contends in effect that it is entitled to ban excavation outright within the three-mile radius because it has no assurance that Red Top would comply with any lesser restrictions. This argument does not convince us.

First, the city implicitly contends, without benefit of any supporting evidence or legal authority, that simply because it fears Red Top would not comply with any lesser restrictions on excavations, the city can ban excavation entirely. We do not believe that the city can extinguish Red Top's right to conduct business on such a speculative argument. Second, this argument overlooks the city's ability to enforce lesser restrictions with sanctions. The city's unwillingness to find a common ground on which excavation safely can be conducted at distances within three miles is no justification for the city to ban the activity outright. This especially is true where the uncontradicted evidence in this case establishes that excavation safely can be conducted without the need for the three–mile restriction.

■ The fourth issue concerns ordinance no. 3089 and section 3 of ordinance no. 4137. The trial court found them to be defective.[1] In pertinent part, these ordinances empowered the common council to ratify the permit sought by Red Top. The defect detected by the trial court is that the ordinances contained no standards to guide the council

1. At this point the city also attacks the court's conclusion no. 3. In this conclusion the court held the council had no authority to hold the proceedings of August 11 and 25, 1975. What the trial court meant by this is not entirely clear. The city treats this matter as part of its discussion on the issue presented in the accompanying text. We will likewise. We note also that the trial court's decision can be sustained even if this particular conclusion no. 3 were deleted.

when it decided whether to ratify the permit. The city's motion to correct errors attacks this conclusion with the statement that the council's considerations "are channeled by provisions both within and without" the ordinances. Neither in the motion to correct errors nor on appeal does the city articulate these "provisions." The city's appellate brief discusses only general legal principles. The general discussion in the city's brief has scant relationship to the motion to correct errors. We may consider the issue waived. Trial Rule 59(G). We observe that the city has apparently conceded that the ordinances lack any guidelines for the council to follow. The city has thus failed to address the precise issue, namely, whether the ordinances are defective for failure to contain guidelines for the council to follow when deciding whether to ratify a permit. Nonetheless we will give our view of the matter.

Several cases from the Supreme Court have resolved this issue against the city. A good example is *Park Hill Dev. Co. v. City of Evansville*, (1921) 190 Ind. 432, 130 N.E. 645. In that case an ordinance required that no cemetery could be established until a plat thereof was approved by the board of public works and the common council. The Court held that portion of the ordinance invalid because it conferred arbitrary power on the council and failed to establish a uniform rule of action. 130 N.E. 647. A similar result was reached in *City of Elkhart v. Murray*, (1905) 165 Ind. 304, 75 N.E. 593, 593–94:

"The ordinance must contain permanent legal provisions operating generally and impartially upon all within the territorial jurisdiction of such city, and no part thereof be left to the will or unregulated discretion of the common council or any officer. If an ordinance upon its face restricts the right of dominion which the owner might otherwise exercise without question, not according to any uniform rule, but so as to make the absolute enjoyment of his own depend upon the arbitrary will of the city authorities, it is

invalid, because it fails to furnish a uniform rule of action and leaves the right of property subject to the will of such authorities, who may exercise it so as to give exclusive profits or privileges to particular persons. [citations deleted.]

Indiana cases reaching a similar result include *City of Richmond v. Dudley*, (1891) 129 Ind. 112, 28 N.E. 312; *Bills v. City of Goshen*, (1889) 117 Ind. 221, 20 N.E. 115; *Indiana Waste Systems, Inc. v. Board of Comm'rs of Howard County*, (1979) Ind. App., 389 N.E.2d 52, 60–61. This case law follows the general rule that where, as here, the evidence demonstrates that the activity in question is amenable to regulation by specified restrictions, then an ordinance, to be valid, must contain those restrictions. 56 Am.Jur.2d *Municipal Corporations* § 369 (1971); 51 Am.Jur.2d *Licenses & Permits* § 104 (1970); 9 McQuillin, Municipal Corporations § 26.64 (3d ed. rev. 1978). In light of this authority we agree that the challenged provisions are invalid.[2]

The next issue arises from the board's revocation of Red Top's permit. This occurred March 18, 1976. As we noted earlier the minutes of this meeting and the city's brief disclose that the board based the revocation on Red Top's lack of interest in the realty, and on the three–mile requirement of ordinance no. 4137. In an earlier portion of this opinion we agreed with the trial court that the two reasons were invalid. We also agree with the trial court's conclusion that revocation based on those two invalid reasons likewise was invalid. The city argues that it has the power to revoke a permit. Be that as it may, we do not believe the revocation can be based upon invalid reasons.

For its last issue the city claims this lawsuit was untimely. The city's motion to correct errors adverts to this issue with the language that "Plaintiff did not file suit within the required time limit . . . ." The city tendered no facts or grounds upon which the error is based. The city has not adequately preserved this issue and it is

---

**2.** We note that ordinance no. 4137 has a severability clause.

waived.  *See* former Trial Rule 59(B) and (G) and current Trial Rule 59(D); *Guardiola v. State,* (1978) Ind., 375 N.E.2d 1105, 1107; *Gumz v. Starke Cnty. Farm Bur. Coop. Ass'n, Inc.,* (1979) Ind., 395 N.E.2d 257, 263; *Gemmer v. Anthony Wayne Bank,* (1979) Ind.App., 391 N.E.2d 1185, 1188; *McGann & Marsh Co. v. K & F Mfg. Co.,* (1979) Ind. App., 385 N.E.2d 1183, 1189.

Affirmed.

CHIPMAN and MILLER, JJ., concur.